LUKE v. RHODES.

Opinion delivered April 19, 1915.

1. PARTNERSHIP—ACCOUNTS—ADJUSTMENT.—The probate court has no authority to adjust accounts between a decedent and his surviving partner.

2. PARTNERSHIP—ADJUSTMENT OF ACCOUNTS—LACHES.—Appellant and deceased were partners engaged in business. After the death of the deceased the appellant waited over three years before bringing proceedings in the chancery court looking to an adjustment of the partnership affairs. *Held,* appellant was barred by laches, from seeking such an adjustment.

Appeal from Mississippi Chancery Court, Osceola District; *Charles D. Frierson,* Chancellor; affirmed.

*St. John Waddell* and *B. J. Semmes,* for appellant.

The period of limitation did not begin to run until Rhodes had repudiated his trust and notified the appellant that he would not grant the accounting, which was in June, 1910. Therefore, conceding that equity in applying the doctrine of laches, follows by analogy the period of limitation, and that this period, in this case, would be three years, plaintiff is not barred by laches. 135 U. S. 621; 73 Fed. 374; 7 N. C. 139; 9 Ark. 527.

*J. W. Rhodes, Jr.,* and *W. J. Lamb,* for appellees.

Counsel review the testimony and, citing no authorities, contend that the chancellor's decree is supported by a clear preponderance of the evidence.

SMITH, J. Appellant filed two suits in the chancery court of Mississippi County on the 8th day of June, 1912, which were consolidated by consent, and both submitted at the same hearing on the same proof. One of the cases was a suit against appellee Rhodes as administrator for an accounting of the partnership affairs of the firm of Keiser & Luke; and the other was for possession and partition of lands held by the widow and heirs of Keiser.

The complaint in the first case alleged that Rhodes was the administrator of J. P. Keiser, deceased, who was formerly a partner of the appellant, Charles O. Luke; that the death of Keiser dissolved the partnership, which had been extensively engaged in the sawmill and lumber business in Mississippi County, Arkansas, and Rankin County, Mississippi; that there had been no accounting of the partnership affairs in Keiser's lifetime, and that the administrator had led appellant to believe that he would, as administrator, have an accounting and settlement with appellant, but that the said administrator refused to have an accounting and settlement of the partnership affairs, and that all of the books and property of the partnership were in the hands of Rhodes as administrator. This was a suit for an accounting.

The complaint in the second case was against the widow and heirs of Keiser, and it was there alleged that the partnership owned certain lands, the title to which had been taken in the name of Keiser individually, and that there had never been any accounting and settlement of the partnership affairs, and it was prayed that an accounting be had and that a trust be declared, and that the lands be partitioned. The pleadings were amended after a demurrer had been filed.

An answer was filed in which the existence of the partnership was admitted, but it was alleged that appellant had only a working interest in this partnership, and that its capital consisted principally of lands owned by Keiser in his lifetime.

Among other defenses set up was that of laches in the institution of the suit, and it appears that under the direction of the chancellor, the proof was devoted entirely to this question, and upon the final hearing, the court found the fact to be that appellant had been guilty of laches in bringing these suits, and they were accordingly dismissed, and this appeal has been prosecuted from that decree.

The depositions of only three witnesses were taken, being those of the appellant, the administrator, and that of Judge W. J. Driver, who had been employed by appellant to represent him in the litigation which he anticipated instituting for the accounting which he now asks.

It appears that the partnership was formed about 1900, and that in 1902 it began the operation of a sawmill plant in Mississippi, but there was never any settlement of the partnership affairs. Keiser died October 15, 1907, but on February 6, 1905, he wrote appellant a letter, in which he strongly intimated that the affairs of the partnership were in very desperate circumstances, and that he had carried its burdens to about the limit of his capacity. Some time thereafter, appellant came to Osceola, which was the principal place of business of the partnership, and spent about two weeks going through the books of the partnership, and upon his departure, carried away with

him a book designated as the "Lumber Book," and has since retained this book in his possession. The administrator was appointed on the 23d of October, 1907, and immediately entered upon the discharge of his duties. Appellant testifies that he first called on the administrator for a settlement in December, 1907, at which time he discussed at some length the affairs of this partnership, and that he next conferred with him on this subject on the 29th of May, 1908, at which time he gave the administrator a paper showing his demands against the estate. The purpose of this paper, and of appellant in delivering it to the administrator, and the conversation had about it, constitutes the principal questions of fact in the case. The appellant says that the paper was a mere memorandum, which he had made from the partnership books at the time of his inspection of them, and that it was designed only to aid the administrator in ascertaining the state of the accounts between the partners. Appellant admits, however, that in June, 1910, the administrator told him that the estate owed him nothing, and that no settlement would be made with him; but he contends that prior to this time he had relied upon the administrator's assurance that a settlement would be made. Upon the other hand, the administrator testified that the paper was given to him as a statement of appellant's demands against the estate, and that he told appellant at the time that if his demand was allowed it would consume the entire assets of the partnership, and that he could not, and would not, allow it, whereupon, he testified, appellant told him he would employ an attorney to represent him, and that in anticipation of a suit, witness retained counsel to represent the estate.

Some time later, appellant consulted and retained Judge W. J. Driver as his attorney. There was introduced in evidence a letter from Judge Driver to appellant, dated the 22d of December, 1910, in which appellant was advised that relief could only be obtained by suit for an accounting to be brought in the chancery court, and in this letter Judge Driver stated that he would file such a suit at the next term of court, but before this suit was filed,

Judge Driver was appointed judge of his circuit and wrote appellant to employ other counsel to represent him. Judge Driver further testified that he found the accounts of the partnership had been kept without system, and that after considerable investigation, he was unable to determine the state of the accounts between the partners. The administrator testified that he was a bookkeeper of many years' experience, and that he had spent much time working on the books of the partnership, and that he was wholly unable to tell the state of the accounts between the partners, and that in his judgment such an account could not be made up from the books which were in Keiser's possession at the time of his death.

In his statement of the case, appellant says: "It is conceded that equity, in applying the doctrine of laches follows by analogy the period of limitation, and that the period of limitation in this case would be the three-year period.

"The question then narrows down to the proposition of whether the statute of limitation began to run at Keiser's death on October 15, 1907, or whether it began to run in June, 1910."

On the other hand, appellee says that the statute of limitation began to run against this suit upon Mr. Keiser's death, and, if not, that it at least began to run on the 29th day of May, 1908, when, according to the administrator's testimony, appellant was told that his right to an accounting would be resisted. This suit was not brought until more than three years after the 29th day of May, 1908.

There are no circumstances in proof which forbid the application of the rule that one must not be guilty of laches in enforcing a right. The partners had equal means of information, and there was no concealment of facts by one from the other. This partnership was formed in 1900, and appellant was advised by Mr. Keiser on February 6, 1905, that the partnership was in straightened circumstances, and yet he took no action during the life of this partner to ascertain the condition of the partnership ac-

counts. Of course, the right to sue for an accounting would continue as long as the partnership continued, and no plea of limitation or laches could be made against such suit while the partnership continued. Yet the nature and character of the partnership business may be considered in determining when a surviving partner would be guilty of laches in instituting a suit for an accounting after the death of his copartner.

(1) Appellant was correctly advised by Judge Driver that he could obtain relief only in the chancery court, and while it is true that appellant did not wait three years after receiving this advice before instituting suit, that fact can make no difference, because appellant stood charged with this knowledge even before this information was given him by his attorney. It has been repeatedly decided that under our laws the probate court has no jurisdiction to adjust accounts between a decedent, and his surviving partner. *Nelson* v. *Green,* 22 Ark. 547; *Tiner* v. *Christian,* 27 Ark. 306; *Culley* v. *Edwards,* 44 Ark. 423; *Choate* v. *O'Neal,* 57 Ark. 299. Discussing this question in the case of *Choate* v. *O'Neal, supra,* it was said: "As that court (the probate court) could not ascertain whether anything was due to the appellant except from an account which it had no power to state, it should have refused to take jurisdiction of his claim; and the circuit court should have dismissed the case on appeal. *Grider* v. *Apperson,* 38 Ark. 388.

"The appellant's remedy was by suit in equity against the appellee to obtain a settlement of the partnership accounts and a decree for any balance shown to be due him. On obtaining such decree, it would, of course, become the subject of an allowance in the probate court under the statute, in the manner provided for common-law judgments recovered against a decedent's personal representative."

(2) As a surviving partner, appellant's rights were not dependent upon the administrator's action. He could have made this accounting himself, and should have done so. It was his right as well as his duty to gather in and

make available all the assets of the firm for satisfying firm creditors, and adjusting partnership equities, and then to hold the residue for distribution to those entitled thereto. *Coolidge* v. *Burke,* 69 Ark. 237; *Hill* v. *Draper,* 54 Ark. 395.

The court below found that appellant was guilty of laches, and as we think this finding is not contrary to the preponderance of the evidence, the decree of the court below is affirmed.