PEDEN *v.* PEDEN.

5-2462                                                  350 S. W. 2d 509

Opinion delivered October 23, 1961.

*Williams & Gardner,* for appellant.

*L. A. Williams* and *Wiley W. Bean,* for appellee.

PAUL WARD, Associate Justice. This litigation between father and son involves a partnership accounting in chancery, and also a suit by the father on a note in circuit court. The two suits were consolidated in the chancery court. The son, appellant herein, prosecutes this appeal.

The issues involved will be more easily understood from a brief statement of facts and events preceding the litigation. In 1942 appellee, Sam Peden, and Leland King formed a partnership lumber company. Among other things the company manufactured ammunition boxes for the government. Later appellant, who was released from the Army, acquired 1/3 of his father's interest. This partnership will be referred to as the Peden-King partnership. That partnership, apparently a prosperous one, was dissolved in 1945 by agreement of all interested parties. The dissolution, put in writing and signed by all parties (including appellant), revealed considerable cash assets of which $11,927.73 belonged to the father (appellee) and $18,724.68 belonged to the son (appellant).

Sometime after the Peden-King partnership was dissolved (as above set out) another partnership lumber company was organized, composed of appellant, appellee, Leon Peden, and J. E. Harris. (Harris later sold to appellee.) This will be referred to as the Peden Lumber Company. In order to pay for his 1/4 interest in the new company, appellee executed his note in the amount of $6,071.05 to his father.

On August 26, 1952, Sam Peden filed suit in circuit court against his son, W. C. Peden, to collect the balance due together with interest on the note heretofore mentioned. Judgment was also sought for $1,050 for house rent and $35.06 for water and gas bill.

On September 9, 1952, Sam Peden and Leon Peden filed a suit in chancery court against W. C. Peden (appellant) to dissolve the Peden Lumber Company, and to have a receiver appointed pending final disposition. It was alleged, among other things, that Sam Peden owned

a 1/2 interest and W. C. and Leon owned a 1/4 each; that W. C. had failed to cooperate and had withheld funds belonging to the company, and; that the company would deteriorate unless dissolved.

On December 15, 1952, appellant filed an answer in the chancery case (and on same day filed an answer in the circuit court case wherein he asked for a consolidation) in which he also asked for a dissolution of the Peden Lumber Company, and alleged substantially as follows: for 39 months the plaintiffs refused to work, causing him a loss of $2,500; plaintiffs sold equipment causing him a loss of $2,000; they sold timber at a loss to him of $500. Appellant asked for a recovery of $10,500 for loss of profits and $5,000 for his 1/4 in the partnership. In appellant's answer in the circuit court, he admitted executing the said note to appellee for $6,071.05, but that it had been paid in full from partnership profits.

Then on December 28, 1955 after the cases had been consolidated, and after the receiver had been appointed, appellant filed an amendment to his answer in which he asked to reopen the settlement in the Peden-King partnership which, as before stated, was dissolved by agreement in 1945.

The record discloses that an accountant examined and reported on the financial status of the Peden Lumber Company's books, and that a Special Master was appointed, agreeable to both parties, to hear the testimony. Much testimony and voluminous exhibits were introduced in evidence.

The Master, after several hearings, found:

(a)   Appellant was indebted to appellee on the note (after deducting payments and counting interest to August 4, 1960) in the sum of $6,178.54, in the sum of $1,050 for rent, and $35.06 for water and gas bill.

(b)   In regard to the dissolution of the Peden Lumber Company, there was owing (after deducting all expenses of the receivership) to Sam Peden the sum of

$9,741.51 and to W. C. Peden the sum of $1,469.48. This accounting did not include land belonging to partnership. A decree was entered in accordance with the above, fixing a lien on appellant's 1/4 interest in the land to secure payment of the amount due on the note.

Certain exceptions were filed by appellant to the Master's report and disposed of by the trial court, but they blend and will be discussed, where pertinent, along with the points set out for reversal.

Appellant relies on three separate assignments of error set out, in substance, in the following order: (1) Neither the statutes of limitations nor laches barred appellant from an accounting of the Peden-King partnership; (2) Appellant does not owe appellee anything on the note, and; (3) Appellant was entitled to damages.

(1) *Statutes of Limitations and Laches.* This point arose as an incident to appellee's first exception to the Master's report. The Master did not consider the statutes of limitations and laches because he conceived it to be a legal question for the Chancellor's decision. The Chancellor then held that appellant could not reopen the dissolution and settlement of the Peden-King partnership because of the said statutes and also because of laches, and we think the Chancellor was correct. The partnership was dissolved in 1945. Appellant made no objection to the accounting and failed to assert any supposed rights based on the same until he filed his amended answer on December 28, 1955—a lapse of 10 years. If the partnership was based on an oral agreement (and there was testimony to this effect), then the three years statute of limitations would apply. If the partnership was based on a written instrument the five years statute would apply. See: *Williams* v. *Walker,* 148 Ark. 49, 229 S. W. 28; *Luke* v. *Rhodes,* 117 Ark. 600, 176 S. W. 111, and *Booth* v. *Hayde,* 228 Ark. 244, 307 S. W. 2d 227.

It is appellant's further contention, however, that laches and not the statutes should apply. This argument is based on the contention that a trust relationship between him and appellee was created because appellee

came into possession of his money ($18,724.68) and did not account for it. For several reasons, hereafter set out, we cannot agree with this argument and contention.

In the first place there is a sharp conflict in testimony as to whether appellee paid appellant all of the money due him from the Peden-King partnership. However, even if it be conceded that appellant did not receive all money due him, he still is barred under the facts in this case as the Chancellor found them to be. It is (as must be, to prevail) appellant's contention that he did not know (and had no cause to suspect) until 1958 he received less than what was due him from the Peden-King partnership. This contention on the part of appellant is difficult to sustain in the face of the undisputed facts revealed in the record. The dissolution of the Peden-King partnership in 1945 was reduced to writing and signed by appellant, and it showed exactly what was due him. The Chancellor's finding that there was no fraud or concealment practiced by appellee is supported by the weight of the testimony. It clearly appears that appellant, a man over thirty years of age at the time, was in possession of sufficient facts about the dissolution to put him on inquiry as to any undisclosed material facts if any existed. In the case of *Smith* v. *Olin Industries, Inc.*, 224 Ark. 606, 275 S. W. 2d 439, this court quoted with approval the following statement:

"It is well settled that when the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known to him were such as to put the duty of inquiry upon a man of ordinary intelligence."

(2) It is here insisted that the trial court erred in holding appellant indebted in the sum of $7,263. The record discloses that this is the exact amount the court found due on the note previously mentioned plus rent and the gas and water bill. The record discloses ample evidence to support this finding. In fact it appears appellant's only defense is that this amount is offset by what he had coming to him from the Peden-King part-

nership. This defense was disposed of in our previous discussion under point (1) above.

(3) A careful reading of the record convinces us the trial court was correct in dismissing appellant's claim for damages. The several grounds on which damages were predicated have been heretofore set out. It would unduly lengthen this opinion for no useful purpose to set forth the testimony tending to support and to refute appellant's claim. We have read it carefully and are satisfied that the Chancellor's finding on this point is well supported by the testimony. In fact we fail to get the impression that appellant was seriously pressing this claim. At one point in the trial appellant made this statement, shown on page 252 of the record: "I am not claiming for damages. . . ."

From all the above we conclude that the decree of the trial court must be, and it is hereby, affirmed.

Affirmed.