LOUIS WERNER SAWMILL COMPANY *v.* SESSOMS.

Opinion delivered July 12, 1915.

1. REFORMATION OF INSTRUMENTS—MISTAKE.—To justify the reformation of an instrument on the ground of mistake, it is necessary that the mistake should have been mutual, and as a general rule equity will not reform a contract or deed for a pure mistake of law.

2. TIMBER DEEDS—REFORMATION—"EXPEDITIOUS CLAUSE"—MISTAKE OF LAW—LACHES.—Deeds to certain timber were given by appellees to appellant, giving appellant fifteen years in which to remove the timber, but providing that the same would be removed as expeditiously as possible. After a lapse of six years, appellant sought to have the deeds reformed, on the ground the the insertion of the term "as expeditiously as possible" in the deed, was inserted through mutual mistake. *Held*, under the evidence that plaintiff was barred by laches from seeking such relief.

3. TIMBER—SALE—REMOVAL—"EXPEDITIOUS CLAUSE."—Appellees granted certain timber lands to appellant, the contract providing that appellant would remove the timber as expeditiously as possible. Appellant then conveyed its right to remove said timber to the E. Co., giving the E. Co. fifteen years in which to remove the timber. *Held*, the rights of the parties would be determined by appellant's ability to cut and remove the timber, at the time that he entered into the contract with appellees, and that all the parties would be bound by the "expeditious clause" in the contract between appellant and appellees.

Appeal from Union Chancery Court; *James M. Barker,* Chancellor; affirmed.

*Gaughan & Sifford, Aylmer Flenniken* and *Neill C. Marsh,* for appellant.

1.    The time granted in the deeds of July, 1907, for cutting the timber had not expired by the express terms of the deeds as written, at the time of filing these suits. The extension deed complained of conveyed to appellant "its lawful *successors and assigns forever,* all of the pine timber over twelve inches in diameter at the stump standing, growing and being on said lands." The right to convey the timber is not left to inference, but expressly granted in the deed itself, and if effect is given to the granting clause, which must be done to give the deed any effect at all, appellant, Werner company, had the right to convey the timber to the Edgar Lumber Company with such time to cut and remove it as was granted in the extension deed. 99 Ark. 112. This court in the case just cited lays down the rule as to proper expedition as follows: "Take into consideration the location of the land, its accessibility, the character and quantity of the timber thereon, the seasonableness of the weather, the facilities for cutting and removing the timber, and all other conditions and circumstances which might affect the cutting and removal thereof." It can not be said that the Edgar Lumber Company was only given such time as it would have required appellant, Werner company, proceeding with expedition and dispatch, to cut and remove the timber. To put such a construction upon the deed would directly contravene the granting clause thereof, and would be placing a limitation upon its right to convey and upon the rights of its successors or assigns, not contemplated in the deed, and would be importing into the deed itself a condition which its terms do not imply.

This court has said that appellants could not be expected to extend their railroads and use all of their facilities to reach these lands as soon as they might possibly have been reached after the conveyance of the timber to them, without regard to the expense incident to doing so

and the consideration of the removal of their other timber nearer to the mills and more accessible, and the best and most practicable method for reaching it with proper dispatch and expeditiously cutting and removing it all. *Burbridge* v. *Arkansas Lumber Co. et al.,* 118 Ark. 94.

It is in evidence that the Werner company at the time of the exchange had other timber contracts that were expiring. This is one of the "circumstances and conditions which affect the cutting and removal" of the timber, and these must be taken into consideration, as well as the circumstances of it being impossible for the Werner company to secure a right-of-way across certain lands, and the fact that, having no right of eminent domain, it could not condemn a right-of-way for its spur tracks across said lands. These facts are to be considered in connection with the location of the land, its accessibility, the character and quantity of the timber thereon, and the facilities obtainable for cutting and removing the timber. *Supra;* 77 Ark. 12; 99 Ark. 112.

The burden was on appellees to show that the Edgar Lumber Company had not proceeded with proper dispatch, yet the proof is uncontradicted that every day, since its acquisition in July, 1907, it has been steadily cutting and extending its roads and moving its camps and logging operations directly toward the timber in controversy, with the exception of the eighteen months that it was forced to go to Louisiana in order to save forty million feet of timber in that territory, which it had a right to do. *Supra.*

2. The timber deeds involved should be reformed. The subject-matter of the sale was time, and the amount of time agreed upon was fifteen years. The mistake in the deed was in describing the thing bought and sold, the time. The mistake in these deeds was one of fact, and not of law, but the authorities are overwhelming to the effect that a mutual mistake whether of law or fact will be corrected. 51 Ark. 394; 98 Ark. 14; 11 N. Y. 591; 28 L. R. A. (N. S.) 785; *Id.* 844; *Id.* 882. The proof shows decisively, clearly and beyond all reasonable controversy

that the language used in the timber deeds describing the time for removal, fails to express the contract between the parties. 64 Conn. 28, 29 Atl. 133; 125 Ga. 699, 28 L. R. A. (N. S.) 785; 59 Ia. 359; 13 N. W. 323; 55 Ia. 484, 8 N. W. 322; 64 Ala. 468; 28 L. R. A. (N. S.) 791, note; 67 N. Y. 283.

*H. S. Powell,* for appellees.

1. He who comes into a court of equity, seeking equitable relief, must come ready to do equity and with clean hands. The overwhelming weight of the testimony shows that the appellees were misled to their damage by the misrepresentations and concealments of the representation of the appellant, Werner company. 108 U. S. 218; 5 How. (U. S.) 192; 19 Wall. (U. S.) 254; 1 *Id.* 518; 12 Pet. (U. S.) 178; 16 Cyc. 144, and cases cited; 7 Ark. 516; 53 Ark. 150; 47 Ark. 311; 38 S. E. 181; 46 S. E. 371; 88 Fed. 160; 69 N. E. 614; 76 N. W. 591; 46 N. Y. 615.

2. Within a few days after the execution of the deeds of July, 1907, the Werner company conveyed to the Edgar Lumber Company all its right, title and interest to the timber in controversy. The Werner company is, therefore, not a party at interest and is without right to ask for a reformation of these timber deeds. The Edgar company took with notice of all conditions imposed by these deeds, which were placed on record immediately after they were executed, and were constructive notice to the latter company. No privity of contract exists between the defendants and the Edgar company knew nothing about the alleged mutual mistake, and is not entitled to ask for a reformation. 105 Ark. 459; 33 Ark. 125; 89 Ark. 259; 34 Cyc. 950; Story, Eq. Jur., § 165; 74 Ark. 336.

3. If the appellant, Werner Sawmill Company, be treated as a proper party and as having qualified itself to ask relief in a court of chancery, still it is not entitled to the relief prayed for.

A court of chancery is without power to grant a reformation, where the mistake, if any, is unilateral. The evidence here shows that the mistake in inserting

the objectionable clause in the deeds was solely that of appellant, and is not a case of mutual mistake. 99 Ark. 480; 39 S. W. 236.

If, as contended by appellants, they are not guilty of laches or negligence, they are placed squarely upon the proposition that they were not mistaken as to the instrument itself, but were mistaken as to the legal effect of the same. This affords no ground for reformation. 46 Ark. 167; 2 Pomeroy, Eq. Jur., § 448; 49 Ark. 425; 105 Ark. 455. The construction of a deed or contract, where it is certain and unambiguous, is always a question of law. 103 Ark. 428; 75 Ark. 55.

To entitle a party to reform a written instrument upon the ground of mistake, it is essential that the mistake be mutual and common to both parties, and the proof of such mistake must be clear and decisive, and that it was common to both parties by proof beyond reasonable controversy. 102 Ark. 326; 83 Ark. 131; 73 Ark. 614; 91 Ark. 162; 79 Ark. 256; *Id.* 592; 81 Ark. 166; *Id.* 420; 82 Ark. 226; 85 Ark. 62; 84 Ark. 349; 89 Ark. 309; 90 Ark. 24; 91 Ark. 246; 94 Ark. 200; 96 Ark. 230; 97 Ark. 635; 98 Ark. 23; 101 Ark. 461; 104 Ark. 475; 105 Ark. 455; 108 Ark. 503; 111 Ark. 205.

Hart, J. On the 20th of February, 1913, appellants instituted seventeen suits in the chancery court against certain land owners, in which they sought a reformation of timber deeds executed by appellees to the Louis Werner Sawmill Company between the 8th and 15th of July, 1907. The defendants answered and denied the material allegations of the complaints and filed cross-bills in which they asserted that appellants had forfeited their right to cut and remove any of the timber involved in the suits and asked that the timber deeds be cancelled as a cloud upon their title. All of the suits were consolidated for the purpose of trial and the court rendered judgment against appellants, denying the relief sought, and granted appellees the relief prayed for in their cross-complaints. The cases are here on appeal.

The record in the cases is long, and to set out in substance the testimony of each witness would extend the limits of this opinion beyond what is practicable. We have read carefully and patiently the record in the case and have concluded that a statement of the facts pertinent to the issues raised by the appeal may be summarized as follows:

For several years prior to the year 1907 and since that time the Louis Werner Sawmill Company, a corporation, had a plant at Griffin in the northern part of Union County, on the St. Louis, Iron Mountain & Southern Railway Company's road, where it manufactured lumber.

The Edgar Lumber Company, a corporation, had a sawmill plant at Wesson, in the southwest part of Union County.

Prior to the year 1907 the Louis Werner Sawmill Company had purchased from the appellees the timber which is the subject-matter of this action. There is a ridge which runs practically east and west through Union County and near its crest runs the El Dorado and Marysville public road. The timber in question lies in irregular strips and segregated tracts covering a territory about five miles long and, approximately, a mile wide at its widest point. The timber is south of the El Dorado and Marysville road and is about fifteen miles from Griffin, where the mill plant of the Louis Werner Sawmill Company is situated. The sawmill plant of the Edgar Lumber Company is about twelve miles southeast from the timber in controversy.

A local railroad was incorporated and extended in a westerly and southwesterly direction from Griffin for the purpose of logging the timber owned by the Louis Werner Sawmill Company. It ran about three and one-half miles north of the timber in question. The Louis Werner Sawmill Company and the Edgar Lumber Company both owned timber in the same locality. On account of the topography of the country it was impracticable and expensive for the Louis Werner Sawmill Company to get its timber on the south side of the El Dorado and

Marysville public road; and it was equally impracticable and expensive for the Edgar Lumber Company to get its timber on the north side of said public road. Therefore they entered into negotiations for the purpose of exchanging timber so that each company would have its timber more nearly in a body.

The Edgar Lumber Company was unwilling to make the exchange unless the Louis Werner Sawmill Company would execute a deed to it giving it fifteen years within which to remove the timber. That company had deeds from the appellees to the timber in question but did not have that length of time within which to remove the timber. They sent an agent to appellees and to other persons to ascertain whether they could secure new deeds with a time limit of fifteen years. They first made contracts with the appellees reciting a consideration of $5 cash and a certain other designated sum in case the option to purchase should be consummated. These contracts gave the Louis Werner Sawmill Company the right of removal of the timber for a period of fifteen years from June, 1907. Pursuant to these contracts the additional consideration was paid and timber deeds were executed by the defendants to the Louis Werner Sawmill Company. The deed granted to the sawmill company timber of certain dimensions named therein and in regard to the time of the removal of the timber, contained the following clause:

"The party of the second part shall cut and remove said timber as expeditiously as possible, and it is agreed that unless it shall have removed the same within a period of fifteen years from the date hereof, that it shall be responsible for and pay to the first party the full amount of taxes assessed against said lands after the expiration of said period of fifteen years from this date until such time as said timber is removed and said possession returned to the said first party."

The timber deeds were prepared by an agent of the sawmill company and on printed blanks furnished him by the company for that purpose. After the Louis Werner

Sawmill Company secured these deeds from the defendants it made an exchange of the timber with the Edgar Lumber Company and granted to that company the timber in controversy, with a time limit of fifteen years within which to remove the timber. Prior to the execution of these deeds in 1907 the Louis Werner Sawmill Company had extended a spur to the immediate vicinity of the timber in question and was cutting the timber there. This spur was known as the Williams spur. Several months thereafter it took up that spur and extended another spur from its main line at a point five miles nearer Griffin which also extended right up to the timber in question. This spur was known as the Ballard spur. The Louis Werner Sawmill Company cut a great deal of the timber it got from the Edgar Lumber Company and hauled it over this spur.

Prior to June, 1907, the Louis Werner Sawmill Company had a mill with an average capacity of forty thousand feet. At that time it shut down its mill to overhaul its plant and increased its daily capacity to sixty thousand feet. It has run at full capacity since that time. The Edgar Lumber Company in 1907 operated a double band sawmill with a daily capacity of one hundred thousand feet. It has operated regularly and to its full capacity since that time. At the time the two companies made the exchange of timber the Edgar Lumber Company was operating in Columbia County, Arkansas, about fifteen miles from the timber in controversy. After the exchange of the timber the Edgar Lumber Company moved its logging operations back to Union County and worked from its mill out in the direction of the timber in question. It had its main line of logging road within six miles of this timber, average distance, and a spur within a mile of one of the tracts, when, in the early part of 1912, it moved its logging operations to Claiborne Parish, Louisiana. It did this because it had a large amount of timber there on which the time for removal was about to expire. It was imperative that it cut that timber at once or lose it. As soon as the timber in Louisiana was

cut it returned to Union County, Arkanssa, prepared to cut timber in that county, including the timber in question. It learned that appellees claimed that it had forfeited its right to the timber in question and in order that its logging operations might not be entirely stopped pending the outcome of the present suit, an agreement was entered into between the parties as to the value of the timber to be cut by the Edgar Lumber Company.

Other facts will be referred to later in the discussion of the issues raised by the appeal.

In the case of *Earl* v. *Harris,* 99 Ark. 112, the contract for the sale of timber stipulated that the vendee should cut and remove said timber as expeditiously as possible and that unless he should have removed all of the timber within five years he should pay the taxes thereafter assessed against the land until the timber should be removed. In construing that contract the court held that it was not contemplated that the vendee should have five years absolutely in which to cut and remove the timber but that he should remove the timber as expeditiously as possible and that if it required more than five years to do so he should pay the taxes thereafter assessed against the land. To the same effect see *Yelvington* v. *Short,* 111 Ark. 253; *Newton* v. *Warren Vehicle Stock Co.,* 116 Ark. 393, 173 S. W. 819, and *Burbridge* v. *Arkansas Lumber Co.,* 118 Ark. 97.

(1) The clause in the deeds in question providing for a time limit for the removal of the timber is in all essential respects similar to the clauses construed in the cases just cited and the construction placed upon those clauses controls here. This is conceded by counsel for appellants, but the object of their suit is to reform the timber deeds executed to them by appellees. To reform a contract or deed, and then enforce it in its new form, calls for a much greater exercise of the powers of equity than to set aside a transaction. Therefore, to justify a decree for reformation on the ground of mistake, it is necessary that the mistake should have been mutual and it is equally well settled that as a general rule equity

does not reform contracts or deeds for a pure mistake of law. But counsel for appellants insist that under the facts as they appear in the record before us the alleged mistake sought to be corrected is in a measure a mistake of fact.

(2) It will be remembered that, when the Louis Werner Sawmill Company entered into negotiations with the Edgar Lumber Company for the exchange of timber, the latter company required the former to execute to it a deed giving it fifteen years within which to remove the timber. The Werner company already had deeds to the timber but not for that length of time. It then went among the defendants with an option contract providing for fifteen years from June, 1907, within which to remove the timber. Five dollars was paid to obtain this extension contract, as they term it, and when it was ascertained that they could procure such extensions from all of appellees, new deeds, which became the subject-matter of these suits, were executed. The new deeds, instead of containing the clause giving appellants fifteen years absolutely within which to remove the timber, contained a clause now commonly known as "the expeditious clause," which has been set out above. These deeds were prepared by an agent of the Louis Werner Sawmill Company and on printed blanks furnished by that company.

The company, however, contends that it did not intend to insert the so-called expeditious clause in the deeds under consideration and that the clause was inserted by its agent by mistake; that the mistake was mutual; that the deeds as executed failed to effectuate the intention of the parties; that both parties made an honest mistake of law as to the effect of the contract; that the construction placed upon the deeds by law produced results different from those the parties intended; that in such cases courts will interfere to prevent the enforcement of the contract and to relieve parties from the unexpected consequences of it; and that to refuse relief would be to permit one party to take an unconscionable advantage of another and

to derive a benefit from the contract which neither of them intended.

In support of their contention they cite *State* v. *Paup,* 13 Ark. 129; *Knight* v. *Glasscock,* 51 Ark. 390; and the case note to 28 L. R. A. (N. S.) 785; on the other hand, it is contended by counsel for appellees that the deed executed by the parties was the final embodiment in writing of their agreement and that the clause in question was not inserted by mutual mistake. They insist that the deed should be construed in accordance with the rule laid down in the cases above cited construing similar clauses in timber deeds.

We do not deem it necessary to decide this question, for if the contention of counsel for appellants be assumed to be correct, we think they are barred of relief under the facts in this record by laches. The doctrine of laches is applicable to suits of this kind. Pomeroy's Equity Jurisprudence, vol. 6, § 680; 24 Am. & Eng. Enc. of Law, 656.

The jurisdiction to relief in cases like this is purely equitable and must be exercised upon equitable principles. It is true that in the so-called extension contract an absolute time limit of fifteen years was given. But all of appellees were witnesses in the case and testified that the agent of the Louis Werner Sawmill Company represented to them that though a limit of fifteen years was placed in the contract, that the company purposed to remove the timber as expeditiously as possible and that most of it would be removed in two or three years and that all of it would be removed in five years. The agent pointed to the fact that the main line of the logging road of the Louis Werner Sawmill Company had already been constructed practically to the timber in question and that one spur had already been constructed to the edge of the timber; that it was well known by all parties interested that the land could not be cultivated until the timber should be removed and that the land owners were greatly concerned as to the time in which the timber could be removed.

The timber deeds were secured from appellees in the early part of July, 1907.  Appellant, Louis Werner Sawmill Company, exchanged the timber secured from appellees to the Edgar Lumber Company for timber owned by it soon after this time.  It then took up its spur and no effort was made by it to correct the deed until just about the time the present suits were instituted.  It suffered six years or more to elapse before anything was said or done by it in regard to the alleged mistake.  During all this time the deeds were in the custody of the lumber company and it had agents whose duty it was to examine the deeds and see that they were in proper form.  The agents of the sawmill company knew that the so-called expeditious clause was written in the deeds, and no objection was ever raised thereto until after a similar clause had been construed by this court in the case of *Earl* v. *Harris, supra.*  Therefore, we are of the opinion that it would be inequitable now to grant appellants the relief prayed for by them.

(3)  This brings us to the question of whether the time granted in the deeds for cutting the timber had expired at the time of filing the present suit.  It will be remembered that the timber deeds in question were executed in July, 1907; and that soon afterward the Louis Werner Sawmill Company granted to the Edgar Lumber Company the timber in question.  It is true the Werner company by its deed gave the Edgar Lumber Company fifteen years within which to cut and remove the timber; but the Werner company could grant to the Edgar company no greater rights than it possessed.  *Hearin* v. *Union Sawmill Co.,* 105 Ark. 455.

Appellees granted the timber to the Werner company with a proviso that the timber should be removed as expeditiously as possible.  This clause of the contract had reference to the means and ability of the Louis Werner Sawmill Company to remove the timber, and not to that of any subsequent grantee of that company.  Appellees when they made the deeds to the Werner company knew its capacity, knew that it had a main line of logging road

within six miles of the timber, and that a spur had already been built to the immediate vicinity of the timber. After the Louis Werner Sawmill Company exchanged the timber with the Edgar Lumber Company for timber owned by it, it tore up the spur which had been constructed by it in the vicinity of the timber and constructed another spur which extended nearly to the timber, in order to cut other timber owned by it.

It appears from the evidence that the Louis Werner Sawmill Company could have easily removed the timber within five years from the time the deeds were executed. Evidence was adduced tending to show that owing to the topography of the country it would be very expensive to log a part of the timber; but it will be noted that the topography of the country would not be changed by time. Moreover, it is not shown but that the ridges referred to could not be cut down at a reasonable cost.

Soon after the Edgar Lumber Company secured the timber in question it extended its logging road to within a few miles of the timber but in 1912 it tore up its road and proceeded to construct one from its mill to its timber in the State of Louisiana.

It is obvious that the time limit within which to remove the timber must be tested by the language used in the deeds of appellees to the Louis Werner Sawmill Company. The deed provided that the sawmill company should cut and remove the timber as expeditiously as possible. The sawmill company had the right to convey the timber thus purchased by it to the Edgar Lumber Company, but the latter company, in regard to its right to remove the timber, must be governed by the limit in the deed to the Louis Werner Sawmill Company and not by the time limit in the deed from that company to it.

Then, too, in determining what would be an expeditious removal of the timber, we must be governed by the facilities of the Werner company. To hold otherwise might have the effect of extending the time limit far beyond what was contemplated by the parties. To illustrate: If the Louis Werner Sawmill Company should

sell the timber to a small concern the latter might work ever so expeditiously and not be able to remove the timber within a period of more than thirty years; on the other hand, it might sell to a company with a much greater capacity than its own and that company might be able to remove the timber within a very much shorter space of time if it proceeded to remove it as expeditiously as possible.

In cases like this the words "as expeditiously as possible" would not refer to the facilities and capacities of subsequent grantees but would refer to the facilities and capacities of the original grantee.

Tested by this rule, the question is within what time should the Louis Werner Sawmill Company have removed the timber so that it might be said to have removed it as expeditiously as possible. It will be remembered that this company had a logging road parallel with the timber in question and within an average distance of six miles of it. It extended at different times two spurs to the immediate vicinity of the timber. According to the testimony of appellees the company could have removed the timber in any event within five years, and probably within half that time. The agent of the Louis Werner Sawmill Company represented that it could be removed within that time. It is the settled rule of this court that the finding of fact made by a chancellor will not be disturbed on appeal unless against the clear preponderance of the evidence, and from a careful consideration of the evidence pertaining to this branch of the case we are not able to say that the finding of the chancellor is against the weight of the evidence.

It follows that the decree will be affirmed.