ROWLAND *v.* ARKANSAS LUMBER COMPANY.

Opinion delivered May, 29, 1916.

TIMBER DEEDS—SALE OF TIMBER—EXPEDITIOUS CLAUSE.—In an action to recover the value of certain timber cut by the grantee in a deed to the timber, the deed containing a clause that the timber be cut as expeditiously as possible, *held*, a verdict in favor of the defendant was sustained by the evidence.

Appeal from Bradley Circuit Court; *Turner Butler*, Judge; affirmed.

*Mahony & Mahony* and *H. S. Powell* for appellants.

1. The company having failed to cut and remove the timber expeditiously, forfeited all rights, and plaintiffs were entitled to recover for all timber cut after the notice was given. Plaintiffs instructions 1 and 2 should

have been given without modification. The court erred
in giving defendant's request No. 2. No time was speci-
fied in the contract and hence appellee had only a reason-
able time to cut and remove the timber. 99 Ark. 112;
120 Ark. 165; 118 Ark. 94; 111 Ark. 253.

*Fred L. Purcell* and *B. L. Herring* for appellee.

The law was correctly declared in the court's charge
to the jury and the verdict is sustained by the evidence.
Appellee used this expedition in removing the timber.
118 Ark. 94; 120 Ark. 105; 99 Ark. 112; 111 *Id*. 253; 116
*Id*. 393.

HART, J.   R. E. Rowland and Mrs. R. B. Byrd sued
the Arkansas Lumber Company for the value of certain
timber which they alleged the lumber company wrong-
fully cut and removed from their lands in Bradley Coun-
ty, Arkansas. The lumber company admitted cutting
and removing the timber, but as a defense to the action
stated that it was the owner of the timber. The case
was tried before a jury which returned a verdict for the
defendant and from the judgment rendered the plaintiffs
have appealed.

The material facts are as follows:

In March, 1910, the Arkansas Lumber Company was
duly organized as a corporation under the law of the
State of Arkansas, and it took over the lumber mill of
Crannell & Leavitt at Warren, Arkansas. The mill at
that time, had a capacity of about 80,000 feet. The capac-
ity of the mill was increased by the defendant company
until in 1905, it had a capacity of 150 or 160 thousand
feet per day. The defendant also took over from Cran-
nell & Leavitt a log road which extended something over
two miles west from Warren. At that time the only rail-
roads in Bradley County were a branch road of the St.
Louis, Iron Mountain & Southern, extending from Der-
mott to Warren and the log road just mentioned. On
the 23d day of August, 1901, R. B. Byrd, by deed, con-
veyed to the Arkansas Lumber Company all the pine
timber on about 176 acres of land owned by her in the

western part of Bradley County, Arkansas. The deed provides that the lumber company "shall cut and remove said timber as expeditiously as possible and it is agreed that unless it shall have removed all the same within a period of 15 years from the date thereof, it shall be responsible for and pay to the first party the full amount of taxes assessed against said lands after the expiration of said period of 15 years from this date until such time as said timber is removed and said possession returned said first party."

The defendant company began constructing its log road westward, cutting the timber and logging its mill as it proceeded, and was so doing at the time it bought the timber from Mrs. Byrd. In 1905 the defendant had constructed its railroad to a point about 11 or 12 miles west of its mill. During the year 1906, the Rock Island Railroad Company constructed its line of railroad through Bradley County from the northwest to the southeast corner thereof. The defendant extended its log road to Banks to connect there with the Rock Island Railroad. Banks was the nearest point on the Rock Island Railroad to Warren. The log road was then 15 or 16 miles long and was incorporated as the Warren & Ouachita Valley Railroad. The timber in controversy was situated south of Banks and at its nearest point was four and one-half miles from the Rock Island Railroad. At this point it was necessary to cross the L'Aigles which were marshy lands a mile and one-half wide so that it was impracticable to haul timber across them, and it would also be very expensive to build a log road across it.

The Southern Lumber Company was also located at Warren and owned timber in the western part of Bradley County. In 1907 the defendant and the Southern Lumber Company commenced to build a log road south from the western terminus of the road of the defendant near Banks and by the first of January, 1911, it had established a camp about two and one-half miles from the Byrd timber. The Byrd timber was on the west side of the L'Aigles but the defendant owned other timber on the

east side thereof.   The road built by the defendant and the Southern Lumber Company is known as the A. & S. Railroad.   While it was being built, the defendant operated from a station on the Rock Island Railroad and built spurs out into the timber owned by it on the east side of the L'Aigles and operated there.

According to the testimony of the plaintiffs, the A. & S. road was within two and one-half miles of the Byrd timber, sometime in 1910, or at least by the first part of 1911.   It may be fairly inferred from the testimony of the plaintiffs' witnesses that it was practicable for the defendant to have cut and removed the timber from the Byrd land in the latter part of 1910 or during the early part of the year 1911.   We need not abstract the plaintiffs' testimony on this point because the verdict of the jury was in favor of the defendant and in testing the sufficiency of the evidence to support the verdict, it must be viewed in the light most favorable to the defendant.

According to the testimony of the defendant, the A. & S. road from the point where it left the W. & O. V. Railway was constructed through territory where the defendant had no timber.   That was one of the reasons which prompted it to go to Vick a station on the Rock Island railroad and operate from there while the A. & S. road was being constructed.   Vick was situated too far from the timber in question to make it practicable to build a spur from there to it.   The spur would have to run through several miles of territory where the defendant had no timber and this would be so expensive that it would not pay the defendant to build the spur.

After it had cut all the timber which it had in the territory near to Vick, the defendant moved to a temporary camp at the end  of the A. & S. road which was nearly completed.   This was in the latter part of January, 1911.   The usual log haul is from one-quarter to a half-mile.   The proper way to operate is for the mill company to build the spur through the timber and work back.   As soon as a permanent camp was completed at the end of the A. & S. road about seven and one-half

miles south of the temporary camp, the temporary camp was abandoned and the permanent one established, and operations carried on from there.

When the permanent camp was established, spurs were extended out from it in every direction as fast as possible and the Byrd timber was reached in the latter part of 1912 and most of it cut then.

Mrs. Byrd executed a deed to R. E. Rowland to the timber in controversy on November 20, 1912. Under this state of the record we think the testimony was legally sufficient to support the verdict. The mill of the defendant was operated at full capacity from the time it purchased the timber until it cut and removed it, except for a short time while it was being rebuilt after having been burned.

It is true, some of the timber which had fallen down and also a small part of the other timber on the Byrd land was cut several years before by other mill owners under contract with the defendant, but the defendant had the right to cut the timber itself and was not required to assign its rights under the contract in order that the timber might be cut earlier. It is also true that a temporary camp was established within two and one-half miles of the timber in the latter part of 1910 or at least the first part of 1911, but according to the testimony of the defendant, this was only done in order to keep the mill in timber until the permanent camp was established at the end of the log road.

The testimony on the part of the defendant shows that the establishment of a permanent camp at the end of its line, and to work back through the timber, was the most practicable way for it to operate.

It may be fairly inferred from the evidence that it would have been a losing venture for the defendant to have run its spur line to the timber in controversy while it had its temporary camp within two and one-half miles of the timber. The record is quite voluminous and we have only attempted to give the substance of the testimony. When all the facts and circumstances adduced in

evidence are considered, we think the jury was warranted in finding a verdict for the defendant.

In the case of *Earl* v. *Harris*, 99 Ark. 112, the court had under consideration a deed containing a similar clause as to the time in which the timber should be removed from the land and the court in construing it said, "The controlling question involved in the case, we think, is whether or not defendant did, under the circumstances of the case, proceed with all possible expedition in cutting and removing the timber. If he did, then he had a reasonable time after January 20, 1908, in which to cut and remove the same. In order to determine whether or not the defendant did thus proceed in cutting and removing the timber from this land, it would be necessary to take into consideration the location of the land, its accessibility, the character and quantity of the timber thereon, the seasonableness of the weather, and the facilities which were obtainable for cutting and removing the timber, and all other conditions and circumstances which might affect the cutting and removing thereof."

The rule has been reaffirmed in the following cases: *Yelvington* v. *Short*, 111 Ark. 253; *Newton* v. *Warren Vehicle Stock Co.,* 116 Ark. 393; *Burbridge et al* v. *Arkansas Lumber Co., et al,* 118 Ark. 94, 178 S. W. 304; *Louis Werner Sawmill Co.* v. *Sessoms,* 120 Ark. 105, 179 S. W. 185.

The court gave to the jury instruction No. 2 which reads as follows: "You are instructed that under the timber deed executed by R. B. Byrd to the Arkansas Lumber Company on the 23d day of August, 1901, and under which the defendant company claims title to the timber in question, the defendant was not allowed a period of 15 years, or any other definite length or period of time in which to cut and remove the timber in controversy from the land on which it was situated, but that it was its duty to begin to cut and remove the timber from the land as expeditiously as possible after the contract was made, and that it should continue to cut and remove the same as expeditiously as possible from that date until

it was all cut and removed. In order to determine
whether or not the defendant thus proceeded in cutting
and removing said timber from the land, it will be your
duty to take into consideration the location of the land,
its accessibility, the character and quantity of timber
thereon, the facilities which were *reasonably* obtainable
by the defendant for the cutting and removing of the
timber, and all other conditions and circumstances as
detailed by the evidence, which might affect the cutting
and removing of said timber.

"If, therefore, you believe from the evidence in this
case that the defendant, by beginning to cut and remove
the timber expeditiously after the contract was made on
the 23d day of August, 1901, *acting with reasonable dis-
patch under all the circumstances,* and by continuing to
cut and remove the same as expeditiously as possible
from that date until it was all cut and removed, could
have cut and removed all of the timber prior to the time
same was cut, then you are told that the defendant for-
feited its right to the timber and that plaintiffs are en-
titled to recover of the defendant the reasonable cash
market value of said timber cut in the latter part of 1912,
together with interest thereon at six per cent. per annum
from said date." This instruction was originally asked
by counsel for the plaintiff and the court modified it by
inserting the words in italics. There was no error in
the modification contained in the instruction.

The jury in determining whether the defendant cut
the timber as expeditiously as possible were only re-
quired to take into consideration the facilities which
were reasonably obtainable by the defendant for cutting
and removing the timber. With the word "reasonable"
left out, the jury might have thought that it was required
to take into consideration the facilities which were ob-
tainable by the defendant for cutting and removing the
timber regardless of the cost and expense to the company
or as to whether or not it was proceeding in a practical
way in cutting the timber. So, too, the words "acting
with reasonable dispatch under all the circumstances,"

do not constitute error.  They were merely explanatory of the instruction as requested by counsel for the plaintiffs and in no sense contained a departure from the rule of law governing the construction of deeds like this as laid down in the case of *Earl* v. *Harris, supra,* and our other cases relating to the questions.

At the request of the defendant the court gave the following instructions: ''The court instructs you that the evidence in this case shows that R. B. Byrd, on the 23d day of August, 1901, conveyed by his timber deed, all the pine timber over 12 inches in diameter on the lands described in this controversy, and all the pine and oak timber of the northwest fractional quarter of section 4, in township 15 south of range 11 west, to the Arkansas Lumber Company, defendant in this suit; and the court instructs you that by deed of conveyance, the timber described in the said deed became the property of the Arkansas Lumber Company with the right to enter upon said lands and to cut and remove the said timber described in said deed, unless the defendant, Arkansas Lumber Company, has forfeited its right to said timber by a failure to comply with the terms of the timber deed, and the court instructs you that while it was the duty of the defendant to cut and remove the timber from the land in question as expeditiously as possible, yet, in arriving at what is an expeditious removal, you must take into consideration the distance this timber was from the mill plant of defendant, the facilities which the company had at the date of the deed, with which to remove the timber, the method of removal in contemplation of the parties at that time, and the amount of timber the company had to cut before it should reach this timber, and all other circumstances favoring, and all other obstacles opposing the removal, and if you believe from the evidence in this case that the defendant was proceeding with reasonable dispatch to cut and remove the timber, according to reasonable and customary methods, taking into consideration all the circumstances in the case, then it was proceeding

as expeditiously as possible, and your verdict will be for the defendant."

The counsel for the plaintiff specifically objected to that part of number two which reads as follows: "the amount of timber the company had to cut before it should reach this timber." This was a proper circumstance to be considered. At the time the deed in question was executed, the defendant was operating a sawmill and was extending a log road in the general direction of this and other timber purchased by it. The plaintiff knew that the defendant was purchasing the timber to be cut and used by it in the usual course of business, and for that reason the clause requiring the timber to be cut as expeditiously as possible was inserted in the deed. For a like reason there was no error in placing in the instruction the clause, "with reasonable dispatch," and also the clause, "according to reasonable and customary methods," which were specifically objected to by counsel for the plaintiff.

Counsel for the plaintiffs now insists that the instruction was erroneous because the court added the words "had at the date of the deed" after the word "facilities" making the instruction read, "the facilities which the company had at the date of the deed," etc. They insist that these words limited the jury to a consideration of the facilities which the defendant had at the time the deed was executed and did not permit them to take into consideration the additional facilities which it afterwards acquired. We do not think the instruction is open to this objection. The defendant itself introduced testimony in regard to the increased capacity of its mill and of the extension of its log road in the direction of the timber in question. It also proved that it ran its mill at full capacity during the whole time. It is perfectly apparent that all parties to the suit understood that the jury should take into consideration not only the facilities had at the time the deed was executed, but any additional facilities the company subsequently acquired. The instruction taken as a whole, we think,

conveys this idea and this view is strengthened when we consider the fact that counsel for plaintiffs made specific objections to this instruction in other respects, and the contention now made was not one of them.

The judgment will be affirmed.