BRIGHT *v.* PERKINS.

4-9483                                          239 S. W. 2d 281

Opinion delivered April 30, 1951.

Rehearing denied June 4, 1951.

*Frank C. Douglas,* for appellant.

*Marcus Evrard, James M. Gardner, Reid & Roy* and *Elsijane Trimble Roy,* for appellee.

GRIFFIN SMITH, Chief Justice. Charles Bright sought reformation of a deed he delivered to W. A. Whistle and has appealed from an order dismissing the complaint allegation that grantor and grantee were mutually mistaken regarding the boundary of Lot 7.

Bright acquired Lot 6 in 1921, and in 1937 he bought Lots 7, 8, and 9. He sold the last three to Whistle February 11, 1939.[1] That same day Whistle conveyed to Bright "All [land] adjacent to the northeast corner of Lot 7 and south of the south line of Lot 6, . . . being accretion lands consisting of 200 feet north and south along the southeast line of said Lot 7 and running back to water's edge, same being a mound of land adjacent to Lot 7." Bright did not have this deed recorded until August 12, 1941.

Bright contends that when the conveyance was made he owned the area now contended for, with accretions to the lots along the meander line of Big Lake, but when the deeds were executed true lines had not been established. He had a ditch dug along the west side of Big Lake just south of the highway. Another ditch was dug from the lake toward the highway, and in each undertaking dirt was used to form a mound, the design being to create high ground for use during overflow periods. This second 200-ft. ditch, running in a general north-south direction, was thought by appellant to be the eastern boundary of Lot 7, and the excavated dirt was dumped onto the accretion lands to the east.

Lot 6 is still owned by appellant. A surveyor's rough drawing shows that the area of contest is a part of Lot 7, embracing 1.62 acres south of Lot 6. The northeast corner of Lot 7 is the section line, and the disputed land is marked on this chart (introduced by appellant) as Lot 7.

On August 11, 1939, Whistle conveyed to A. J. Lewis. The deed calls for Lots 7, 8, and 9, and the acreage is 79.69, more or less. In December, 1947, Lewis conveyed

---

[1] The deed description is Lot 7, north half southeast quarter, Lot 8, north half southwest quarter, and Lot 9, south half of south half, all in section 9, township 14 north, range 9 east, containing 79.69 acres, more or less.

to Perkins 360 acres, ". . . together with all accretion lands adjacent to the northeast corner of Lot 7 and south of the line of Lot 6, . . . being accretion lands' consisting of 200 feet north and south along the southeast line of Lot 7 and running southwest to water's edge."

Lewis occupied the mound through his tenant, Ernest Wilson. The complaint alleges Lewis knew when he purchased that the mound "along the water's edge of Big Lake" was not included. Because of the encroachment by Lewis, Bright brought an action in ejectment, resulting in a plaintiff's judgment (January 22, 1945) for "A tract of land lying adjacent to the northeast corner of Lot 7 and south of the south line of Lot 6, . . . being accretion land consisting of 200 feet north and south along the southeast line of Lot 7 and running southeast to water's edge, same being a mound of land adjacent to Lot No. 7."

A writ of possession was placed in the sheriff's hands in June, 1949. That officer's return is a certification that the property could not be located with sufficient definiteness to sustain service, hence the court's directions were asked. It was then that appellant sought equitable relief.

Whistle died before the reformation suit was brought. Lewis, in addition to other defenses, pleaded estoppel when Perkins cross-complained. Other pleas, including an answer by the administrator of Whistle's estate, were filed.

The diagram discussed by appellant in his brief shows clearly that a line running due south from the northeast corner of Lot 7 would leave a triangle of land, or land and water, east and southeast of the mound contended for. Appellees say the accretions conveyed in Whistle's deed are to be found there.

Appellant testified that the mound was formed from ditch cuttings and could not possibly be as far east as appellees say it is. However, the size of the elevated ground is not shown. But the line from the northeast

corner of Lot 7 southwesterly, as disclosed by appellant's exhibit, extends 390 feet to an indicated point and does not correspond with the 200-ft. description. Taking the admitted northeast corner of Lot 7 as a starting point, the diagram projects a line west 475 feet, thence south with a slight westward variation 200 feet, east with a southern variation 175 feet, thence northeastward 390 feet to the starting point. If appellant's contentions are maintainable the 200-ft. north-south accretion area "along the southeast line of said Lot 7" would begin 475 feet west of the admitted northeast corner. There is an express deed reference to the "mound of land," but it is placed "adjacent to Lot 7." Appellant says that he once had possession of the mound and used it.

Conceding such original possession, the difficulty is that appellant sold all of Lot 7 to Whistle, then took back Whistle's quitclaim deed containing the description now assailed, and he would reform it ten years later because of mutual mistakes, and subsequent to the grantor's death.

One of appellant's contentions is that an innocent purchaser is not involved because, before buying the lot from Lewis, Perkins knew of the adverse claim. The evidence shows that before the Lewis-Perkins deed was delivered a contract of purchase was executed and earnest money paid. This occurred before Bright notified Perkins that the mound was his. He did not discuss the matter with Perkins, but sent word by another. It was not shown that the message was delivered. Aside from Perkins' pleading in which it is asserted that he did not have notice of Bright's claim, both Lewis and Perkins take the position that as between Bright and Lewis the rights of each became fixed when judgment in the ejectment suit was rendered. Bright did not record his deed from Whistle until two years after Whistle sold to Lewis.

During trial it was stated by counsel for appellant that when the quitclaim deed was made "It was not thought that this mound was any part of Lot 7."

When appellant sought ejectment he knew as much about the land conveyed by Whistle by the quitclaim

deed as he did when the present action was instituted. He knew, of course, that he should have 200 feet of accretions along the southeast line of Lot 7, running to water's edge. This is all he is entitled to, for there was no appeal from the circuit court judgment.

At the close of appellant's testimony the defendants asked for a decree of dismissal. The motion was argued without a request that the defendant be required to overcome the *prima facie* case appellant had made on issues other than *laches*. The provisions of Act 470 of 1949, Ark. Stat's, § 27-1729, (see *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225) are not invoked; and unless we hold as a matter of law that the plaintiff (whose prayer on appeal is that the decree be reversed with judgment here for reformation of the deed) could not treat testimony introduced in his behalf as sufficient, and on the strength of it ask for the relief sought, the statute in its application to this case is not before us.

We are unwilling to say that Act 470 deprives a litigant of the right to regard his case as having been developed and that he cannot, on the strength of his own testimony, ask for a decree when the issues are argued on their merits.

Affirmed.