SMITH *v.* OLIN INDUSTRIES, INC.

5-598                            275 S. W. 2d 439

Opinion delivered February 14, 1955.

*Wootton, Land & Matthews,* for appellant.

*Gaughan, McClellan & Laney,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by appellants, Sam G. Smith and Winnie D. Smith, his wife, to reform a quitclaim deed and quiet their title to a four-ninths interest in the minerals under a 40-acre tract of land in Lafayette County, Arkansas.

Appellant, Sam G. Smith, was the owner of a 320-acre tract, including the tract in controversy, in 1926 when said lands forfeited to the state for the 1925 general taxes. Mary D. Hudgens acquired the 320 acres from the state by Clerk's tax deed and conveyed an undivided two-thirds interest therein to Hamp Williams who thereafter conveyed an undivided one-third interest to appellant, Sam G. Smith. Appellant, Winnie D. Smith, is the daughter of Hamp Williams and, upon his death, became the owner of a one-ninth interest in said lands.

On May 29, 1936 Mary D. Hudgens, Sam G. Smith, Winnie D. Smith and the other heirs of Hamp Williams executed a warranty deed of said 320-acre tract to F. E. Monzingo in which the minerals were reserved, one-third to Mary D. Hudgens, one-third to Sam G. Smith, one-ninth to Winnie D. Smith and two-ninths to the other heirs of Hamp Williams. This deed was filed for record June 8, 1936.

On June 5, 1936 appellants executed a regular quitclaim deed of the aforesaid lands to F. E. Monzingo and said deed was filed for record the next day. This is the deed which appellants seek to reform so as to show a reservation of a four-ninths mineral interest in the 40 acres in controversy.

On May 14, 1937, F. E. Monzingo conveyed the lands in question along with other lands to Union Sawmill Company. This deed excepts coal and other minerals deposits reserved by certain named railroads, "or any other mineral reservations or exception in this chain of title insofar as same affect [the described lands]". On

October 9, 1944, Union Sawmill Company conveyed the lands to J. W. Anthony, et al, reserving the oil, gas and minerals. Appellants executed separate oil and gas leases covering the 40-acre tract to Carter Oil Co. on July 10, 1947 and July 23, 1947 which were filed for record on the dates of July 19, 1947 and July 25, 1947, respectively.

F. E. Monzingo and wife executed a mineral deed to appellant, Sam G. Smith, on July 23, 1947 conveying all grantors' interest in the minerals under said 40-acre tract and this deed was filed for record on July 25, 1947. On October 16, 1951 Union Sawmill Company executed a "Disclaimer" to appellants releasing and quitclaiming any interest in the minerals under 120 acres of the original 320-acre tract but the 40 acres involved here were not included in that conveyance. Union Sawmill Company sold all its assets to appellee, Olin Industries, Inc., on July 31, 1952 and same were duly conveyed by deed on September 30, 1952 which was filed for record on December 9, 1952.

In the latter part of 1952 and early part of 1953 McAlester Fuel Oil Co., assignee of Carter Oil Co., requested that appellee execute to it a quitclaim deed to the 40 acres in controversy and the request was refused. A producing oil well was brought in on the 40 acres offsetting the tract in controversy on January 25, 1953. Appellants filed the instant suit on May 4, 1953 to reform the quitclaim deed which they executed to F. E. Monzingo on June 5, 1936.

Appellant, Sam G. Smith, testified that he signed the quitclaim deed to Monzingo in 1936 without reading it and then had his wife sign it. He was not very interested in the transaction and paid little attention to it. He admitted receiving the partial consideration of $5.00 recited in the deed but did not remember whether he was requested to execute the instrument by Monzingo or some party representing him. However, the person making the request represented that the deed contained the same reservations as were in the warranty deed executed a

week earlier, and that it was only for the purpose of clearing the title to the two-thirds outstanding equitable interest remaining in Smith in the event that the validity of the 1926 tax deed should be successfully challenged.

Francis Scott was manager of the land department and represented Union Sawmill Company in the purchase of the lands from Monzingo in 1937. He testified that he had no information or knowledge of the transactions between appellants and Monzingo other than those appearing of record, and was never apprised of appellants' present contention that they did not intend to convey the minerals when they executed the quitclaim deed. The 1937 purchase by Union Sawmill Company involved 13,000 acres of timber, the fee title to 600 acres, and a sawmill. Similar testimony was given by Lewis E. Fitch, head of the land department of appellee, Olin Industries, Inc. He stated that when appellee acquired the assets of Union Sawmill Company it had no knowledge of any rights claimed by appellants except those with which it was charged in the chain of title.

On the foregoing testimony and documentary proof the chancellor entered a decree dismissing appellants' complaint and holding that their action was barred by limitations, laches and the intervention of the rights of third parties against whom appellants would have no right of reformation.

Appellants first contend that they did not intend to sell and Monzingo did not intend to buy the four-ninths mineral interest in the lands in controversy, and that the quitclaim deed which they executed to Monzingo in 1936 was the result of a mutual mistake of the parties. It is further insisted that appellee, Olin Industries, Inc., took title from Union Sawmill Company in 1952 with sufficient notice of said mutual mistake to preclude it from claiming as a *bona fide* purchaser of said mineral interest. Appellants say all this is conclusively shown by the testimony of Sam G. Smith and the documentary proof which includes the various deeds, leases and other conveyances affecting not only the 40 acres in question

but other lands included in the original 320-acre tract. Before taking up these contentions we deem it appropriate to consider certain principles applicable in cases of this nature.

It is well settled by our decisions that before the jurisdiction of equity may be invoked to reform a written instrument by parol evidence, the proof must be clear, unequivocal and decisive. *Hicks, Special Admx.* v. *Rankin,* 214 Ark. 77, 214 S. W. 2d 490. It is also the rule in this state that a quitclaim deed is a substantive mode of conveyance, and is as effectual to carry all the right, title, interest, claim and estate of the grantor as a deed with full covenants. *Bagley* v. *Fletcher,* 44 Ark. 153. Our cases also hold that mere ignorance of one's rights does not prevent the running of the statute of limitations or laches against him unless his ignorance is due to the fraudulent concealment or misrepresentation on the part of those invoking the benefit of the statute or the doctrine of laches. *Landman* v. *Fincher,* 196 Ark. 609, 119 S. W. 2d 521. Also, if a purchaser shows he has paid a valuable consideration in good faith, the burden of showing he purchased with notice is on the party alleging it. *Scott* v. *Carnes,* 183 Ark. 650, 37 S. W. 2d 876.

In *Davidson, et al.* v. *Davidson, et al.,* 42 Ark. 362, a party who carelessly executed a deed which allegedly included lands not intended to be conveyed sought reformation against a subsequent *bona fide* purchaser on the ground of mistake. In affirming a decree denying such relief the court said: "It is obvious that if there was any mistake on George W. Davidson's part, as to the contents of the instrument he signed, it was the result of his carelessness, and his confidence in Matthew O., his uncle. He says his uncle told him at the time that the instrument did not mean to include the lands which Jackson Davidson conveyed in his lifetime, only those belonging to the estate, and that he signed hastily, in the bustle of business, and without examination.

That might be ground of relief against M. O., but not against innocent purchasers from him for value, who re-

lied upon recorded title. It is not a case of mutual mistake of facts, as if both parties had supposed an instrument to express or omit something which it did not, but it would be, if the allegations were true, a case of fraud by misrepresentation. In no view, however, would one suffering from such mistake or fraud have an equity for relief from the effects of his carelessness to the detriment of a subsequent purchaser for value, without notice. Here there have been several mesne conveyances between Matthew O. Davidson and the defendant, Price, who now claims the lands, amongst persons to whom no notice nor hint of fraud has been brought home. The question of limitation is not important. The defendant need not resort to it.''

The period of time within which an action may be barred by *laches* may vary according to circumstances. As Judge Hart stated in *Walker-Lucas-Hudson Oil Co.* v. *Hudson,* 168 Ark. 1098, 272 S.W. 836: ''The principle is recognized that time may become of the essence of a contract for the sale or lease of real property, not only by the express agreement of the parties, but from the very nature of the property itself. This principle is especially applicable where the property is of such a character that it will likely undergo sudden, frequent and great fluctuations in value. In respect to mineral property of all kinds the parties interested must be vigilant and active in asserting their rights. *Waterman* v. *Banks,* 144 U. S. 395, 12 S. Ct. 646, 36 L. Ed. 479.

''There is no hard and fast rule as to what constitutes a reasonable time within which the interested parties must act after the facts come to their knowledge. Each case must be governed by its own circumstances, depending upon the situation of the parties, the extent of their knowledge, or means of information, great changes in values, the want of probable grounds for the imputation of intentional fraud, the absence of any reasonable hindrance to the assertion of the alleged rights and the like. *Hammond* v. *Hopkins,* 143 U. S. 224, 12 S. Ct. 418, 36 L. Ed. 134, and *Hoyt* v. *Latham,* 143 U. S. 553, 12 S. Ct. 568, 36 L. Ed. 259.

"It is well settled that when the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known to him were such as to put the duty of inquiry upon a man of ordinary intelligence. *Johnson* v. *Standard Mining Co.,* 148 U. S. 360, 13 S. Ct. 585, 37 L. Ed. 480." See also, *Louis Werner Sawmill Company* v. *Sessoms,* 120 Ark. 105, 179 S. W. 185; *Polzin* v. *Beene,* 126 Ark. 46, 189 S. W. 654; *Bright* v. *Perkins,* 218 Ark. 856, 239 S. W. 2d 281.

It seems to be undisputed that neither Union Sawmill Company nor appellee, Olin Industries, Inc., had actual knowledge of any mistake in the 1936 quitclaim deed at the time of their respective purchases in 1937 and 1952. However, appellants point to the mineral deed from Monzingo to appellants executed July 23, 1947; the deed of October 16, 1951 by which Union Sawmill Company reconveyed to appellants the minerals under 120 acres; the reservation clause of the deed from Monzingo to Union Sawmill Company in 1937; and the leases by appellants to Carter Oil Co. executed in 1947. It is insisted that the record of these conveyances and transfers constituted sufficient notice to appellee to at least require it to make such investigation as would have resulted in a discovery of the mistake in the 1936 quitclaim deed. We cannot agree with this contention. When Union Sawmill Company acquired the lands from Monzingo in 1937, the only notice of intention that it had appeared of record in the deeds executed on May 29, 1936 and June 5, 1936. Union Sawmill Company had a right to assume that the quitclaim deed operated as a complete divestiture by appellants of all their title and interest in the lands as the deed recited.

It is difficult to follow appellants' argument that the deed of October 16, 1951 disclosed an intent not to convey the mineral interest in 1936. The fact that appellants were then willing to accept a reconveyance of the minerals under 120 of the original 320 acres without inclusion of the 40 acres in controversy would reasonably indicate to an outsider that 120 acres were all they were then claim-

ing, and that they had abandoned any claim as to the other lands. It might also indicate that possibly some kind of compromise had been reached between the parties.

Since appellants conveyed all their interests in the lands to Monzingo in 1936 and the latter conveyed all his interest to Union Sawmill Company in 1937, there was no longer any reservation or exception outstanding in the record chain of title and Monzingo had nothing left to convey to appellants by the mineral deed in 1947. Nor can we agree with appellants' contention that the 1936 quitclaim deed was ineffective to convey the minerals because it failed to create a merger of the surface and mineral estate which had been severed in the warranty deed a week earlier. The cases cited in support of this contention do not involve facts similar to those in the case at bar.

It is unquestioned that appellee, Olin Industries, Inc., paid a valuable consideration for the properties it acquired from Union Sawmill Company. It is also clear that any mistake as to the contents of the quitclaim deed executed by appellants in 1936 was the result of their own carelessness and inattention. No fraud or concealment in the procurement of the deed has been established. Even though there might have been a mutual mistake as between appellants and Monzingo and the former entitled to relief against the latter by timely action after discovery of said mistake, there still would be no ground for relief against a subsequent *bona fide* purchaser without actual or constructive notice of such mistake. If there was a mutual mistake it occurred when the deed was executed and appellants' right of reformation then came into existence. Having waited until nearly 17 years later, and until the lands had suddenly become very valuable, to institute the present action, appellants were effectively barred by both limitations and laches as against appellee, Olin Industries, Inc., and the chancellor correctly so held.

Affirmed.

McFaddin, J., not participating.