DEBRA LEA, ET AL, FENTON STANLEY, GUARDIAN
AD LITEM *v.* LENA NIX BYRD

5-4255                                   415 S. W. 2d 336

Opinion delivered May 29, 1967

*Fenton Stanley,* for appellants.

*James C. Cole,* for appellee.

CARLETON HARRIS, Chief Justice. The question in this litigation is whether a deed should be reformed because of an alleged mutual mistake of fact. Appellants, Debra Lea, Donna Sue Lea, Sandra Lea, and Michelle Lea, are minor grandchildren of appellee, Lena Nix Byrd, appellee herein. Mrs. Byrd sued in equity to reform a deed executed from Dave Wilkins and Lula Wilkins to R. D. Nix and Lena Nix on December 10, 1949.[1] Both the granting clause and the habendum clause recited that the conveyance was to R. D. Nix and Lena Nix and her bodily heirs. Mrs. Byrd instituted suit in 1966 to reform the deed, asserting that a mutual mistake of fact had been made, in that the intent of the parties was

[1] At the time of the execution of the deed, Mrs. Byrd was married to R. D. Nix. Mr. and Mrs. Nix were later divorced, and appellee married Lawrence Byrd.

that said deed convey the property purchased to R. D. Nix and Lena Nix for life with the remainder over to Carolyn Hutto (Lea), daughter of appellee by a previous marriage. Appellants, through their guardian *ad litem,* Fenton Stanley, answered, denying all allegations in the complaint (except those allegations appearing as a matter of public record), and denying that appellee was entitled to any relief. On trial, after the taking of evidence, the court found that appellee had sustained her contention, and entered a decree finding that a mutual mistake had been made in the execution of the original deed; further, that appellants had never owned any interest in the land, vested, contingent, or otherwise, and their only apparent interest was a result of the mistake made. The court ordered the deed reformed to reflect the grantees as R. D. Nix and Lena Nix for and during their natural lifetime with the remainder to Carolyn Hutto and her heirs and assigns forever. From this decree, appellants bring this appeal.

The deed, of course, created an estate tail under our statutes and decisions. The question, thus, is whether it is legally possible to reform, in this state, because of mutual mistake, a deed which created an estate tail. Arkansas has followed the policy that, as a general rule, equity will not reform a contract or a deed occasioned simply by a mistake of law. *Louis Werner Saw Mill Company* v. *Sessoms,* 120 Ark. 105, 179 S. W. 185.

Appellee, in support of the court's finding, argues, in this court, that such a deed can be reformed on proper proof, whether the mistake was a mistake of law, or a mistake of fact, though the mistake of fact argument is given greater emphasis.

Under the view that we take, it is not necessary that we discuss the question of a mistake of law, for we think that proof of a mistake of fact was established by clear, cogent, and convincing evidence, such proof being necessary before a deed can be reformed. *Meeks* v. *Borum,* 240 Ark. 805, 402 S. W. 2d 408.

Mrs. Byrd testified as follows:

She had one child, Carolyn Hutto (Lea) by a marriage previous to her marriage to Nix. In 1946, she underwent a complete hysterectomy, and knew that thereafter she would be unable to bear children.[2] In 1948, she married Nix, and the two desired to buy some land. They became interested in 200 acres owned by Mr. and Mrs. Wilkins, and decided that they would like to purchase that land. The witness had money of her own before the second marriage, which was to be used as part of the purchase price. An attorney in Malvern advised that a deed made to Mr. and Mrs. Nix would create an estate by the entirety, and the lands would become the sole property of the survivor. Appellee wanted her daughter, Carolyn, to have an interest in the property, and was not willing to purchase same without assurance that the daughter would have an interest. Another lawyer was consulted, who confirmed the opinion of the first attorney, each also telling her that to carry out her desire, the deed could be made to Mr. and Mrs. Nix for life, with the remainder to her daughter. Appellee stated that she and her husband agreed upon this type of conveyance. Upon being told that Mr. and Mrs. Wilkins had the deed ready which could be obtained at the bank at Sparkman, she and her husband went to the bank for the purpose of closing the transaction; however, she was informed that the deed named only her and her husband as grantees.

"*** When they told me the deed was made out to me and R. D., I backed out. I told them at the bank that I wanted a deed made to me and R. D. for life and then to my daughter, Carolyn Hutto. I left and went back home."

She subsequently told Wilkins the reason for the refusal of the deed.

"A few days later, I heard from the bank. Was

---

[2] A certificate from the Chief Medical Records Librarian of the University of Arkansas Medical Center corroborated this operation.

told that the deed and the other papers were ready. R. D. and I went to the bank. I asked if they had the papers fixed right this time and sort of laughed. He told me it was to me and R. D. for life and then to Carolyn. I didn't question it further and paid the money and signed the note.''

Her recollection was that her conversation was with a Mr. Hayes at the bank, who reported that Mr. and Mrs. Wilkins had signed another deed before a Justice of the Peace, and had brought the instrument to the bank. The payments made by Nix and wife were paid to the bank, and credited on an indebtedness owed by Wilkins to that institution, and the deed was not turned over to appellee and her husband until January, 1953.

Mr. Nix and appellee were divorced in 1958, and he deeded his interest in the property to her. She stated that she did not learn about the mistake in the deed from Wilkins until early in 1966, when she had already agreed to sell the land to a Mr. Shepherd, and, in fact, had received a partial payment[3] of $5,000.00.

The testimony of appellee is rather convincing, and in line with other evidence offered, which will be here-after mentioned. The only weak part of her contention is the fact that it was a long number of years before the mistake was discovered. Yet, this is somewhat un-derstandable, the evidence reflecting that she and her husband did not receive the deed until over four years after its execution, the bank having had possession until the note was paid in full. It is also understandable that, having refused one deed, because it was not properly drawn, and having been assured that the second one was drawn in accordance with her request, Mrs. Byrd ac-cepted the word of the bank official (who probably was sincere in his statement; that the deed had been pre-

---

[3] Apparently the status of the title was discovered at a time when title to the property was being examined preparatory to the Shepherd sale. Mrs. Byrd testified that her daughter, Carolyn, was will-ing to convey her interest to appellee.

pared in a manner to carry out her instructions. It must be remembered that Mrs. Byrd was not a lawyer, but a person totally untrained in, and unfamiliar with, legal terminology, and it is undisputed that the deed was prepared by someone other than an attorney or agent for appellee.

Aside from the testimony of Mrs. Byrd, there are other facts which support her version. For one, Mr. and Mrs. Wilkins, when notified of the purported error, immediately executed a Correction Deed, conveying the property in the manner contended for by Mrs. Byrd. One of the strongest circumstances in her behalf is the fact that within a month after the purchase of the Wilkins property, Mr. and Mrs. Nix also purchased 40 acres of land from Mrs. Elsie Richardson, the language in the deed being in accord with the language that Mrs. Byrd says was intended for the Wilkins deed. The granting clause states, "***do hereby grant, bargain, sell and convey unto the said R. D. Nix and Lena Nix, and upon the death of both R. D. Nix and Lena Nix, then unto Carolyn Hutto and unto her heirs and assigns forever***."

The Richardson deed was a completely typewritten instrument, evidently prepared by someone familiar with legal requirements. A warranty deed form was used by the scrivener of the Wilkins deed with the granting and habendum clauses filled in by such scrivener, apparently either an employee of the bank or the Justice of the Peace who acknowledged execution of the instrument. In *Sherwin-Williams Company* v. *Leslie*, 168 Ark. 1049, 272 S. W. 641, we held:

"***Mrs. Fowler was entitled to a reformation of the deed of trust so as to include the lands in controversy, under the uncontroverted proof that it was the mutual intention of all parties to that deed of trust that such lands should be included and that it was omitted merely through oversight of the scrivener who prepared the deed of trust."

In *Stinson* v. *Ray,* 79 Ark. 592, 96 S. W. 141, we said:

"\*\*\* According to the terms of their agreement a right of way eight feet wide, north and south, and extending due east from Depot Street, a distance of forty feet, and lying south of and adjacent to the land sold should have been conveyed. The draughtsman who drew the deed evidently did not understand the contract of the parties; and the grantor executed it without discovering the error. The evidence adduced at the hearing, clearly, unequivocally, and decisively proves these facts."

The proof is actually uncontradicted that a mutual mistake was made in the original Wilkins conveyance to Mr. and Mrs. Nix, and we consider the evidence to be clear, cogent, and convincing.

Affirmed.